REDMANN, Judge.
“Chief Albert Lopez has a long history of left posterior cervical pain radiating to his left shoulder. ... He has continued to have intermittent difficulty since [an injury of June 1965].
“In recent months [testified to mean two or more] he has had a progression of his symptoms. An x-ray taken in March of 1975 revealed evidence of a deteriorated cervical disc.
“In view of the nature of his problem, I recommended that Chief Lopez be placed on pension.”
Thus, on March 10, 1975, 30 days after the incident of February 8, 1975 sued on, the only physician to give evidence in this case wrote to the Fire Department Superintendent to support Chief Lopez’s request for disability pension without mentioning any February 8 incident.
Many months after the grant of the pension, Chief Lopez demanded workmen’s compensation, alleging that when donning his raincoat at a fire on February 8, 1975, he experienced an injury to his neck which totally and permanently disables him.
Because that March 10 report gave no support to any February 8 incident, this court remanded to allow medical evidence. The only evidence came from Dr. Jack Ruli, the Civil Service Physician for the Fire Department. Dr. Ruli did not treat Chief Lopez; Chief Lopez was being treated by a chiropractor who did not testify.
Dr. Ruli’s testimony does not support plaintiff’s claim that the February 8, 1975 incident disabled him (as plaintiff theorizes) by a permanent aggravation of his pre-ex-isting and previously though intermittently symptomatic “slight narrowing of the inter-vertebral space between C-5 and C-6 poste-riorly” with slight foraminal encroachment.[1]
*637 Reversed; dismissed at plaintiff’s cost.[2]
STOULIG, J., dissents.

. A. . . .1 don’t know if it could cause a permanent aggravation, but it would certainly hurt . . . for a period of time. Q. And it would be an aggravation of his pre-ex-istent condition? A. At the time, yes. . Q. Is it sufficient for a fireman ... to obtain a disability pension ... to show that his particular condition has been caused by the stress of fire duty over the years? A. No, sir, he would have to have a specific accident or injury report. Q. Okay. Is this why, in your report of March 10, 1975, you specifically mentioned the June 1965 accident? A. Yes, sir. Q. And this report, Doc *637 tor, was written after you had taken a complete history from Chief Lopez, is that correct? A. That’s right and at the time when he came to me on February 23rd [1975] I didn’t recall the injury back in 1965, I don’t believe that I was the Fire Department doctor at that time. . Q. Doctor, Chief Lopez has testified that he had pain in the neck on February 8, 1975. He saw you on March [sic; February] 23, ’75 and you wrote your report on March 10, 1975, after you had carefully questioned him about his history and there is no mention of that February 8th pain, is that correct? A. Yes, sir. .
A. . The only thing I can say from the injury or accident on February 8th is that when he made a sudden jolt he sustained a pain in his neck. . . . and whether or not that made the disc last permanently I can’t answer that, I think it would be highly unlikely. . Q. . couldn’t it be said with medical certainty that [the February 8, 1975 sharp pain while putting on the raincoat] could have aggravated — Mr. Talley: Objection. . . . [overruled] A. 1 can’t answer that. ... In all honesty, I cannot answer that that would have caused, that that per se would have aggravated it sufficiently to cause total and permanent disability. . . ... It is very difficult to say that this would have made the disc deteriorate more, I can’t answer that. I don’t know. . Q. What if he had never gotten better? A. Then I think that you would have more of an indication that there would be some cause or [causal?] relationship between February 8th and the persistence of his pain.
There was no evidence that Chief Lopez “had never gotten better”. To the contrary, the evidence is that his pain was intermittent, just as it was reported to have been prior to the February 8 accident.

. Reversing on other grounds, we have accepted as the law of the case the earlier panel’s resolution of the problem that this accident was not reported within six months as required by R.S. 23:1291.
Plaintiffs expectation that disability retirement automatically entitles one to workmen’s compensation as well underscores another problem, perhaps of a legislative nature: both laws are social legislation intended (as also is the unemployment compensation law) to alleviate the disaster of wage-loss. Despite Guerrera v. City of New Orleans, La.App. 4 Cir. 1968, 212 So.2d 223, which overlooked R.S. 33:1995.-1, reducing sick leave pay by the amount of workmen’s compensation paid — and despite R.S. 33:2113, making rights granted by any other statute unaffected by pension payments [but not vice versa] — the problem of whether the law requires two or more replacements for one loss of wages deserves study.